**In the Interest of A.M.B., a minor.**

**STATE of Missouri, James D. Hutchinson, Juvenile Officer, Greene County, Missouri, Plaintiff-Respondent,**

v.

**M.B., Defendant-Appellant.**

**No. 14948.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 9, 1987.

early in 1984. C.V. is also the mother of S.S., a male child who was three years old in 1984. S.S. was also residing in the home with M.B. at that time. While C.V. was S.S.'s mother, S.S. was unrelated to M.B. In April of 1984, S.S. sustained a black eye and bruised buttocks. In May of 1984, he sustained additional injuries, including a bruised face, a cigarette burn on his throat, and bruised buttocks, thighs and legs. The boy also had an injury to his penis. M.B. was charged with the Class D felony of child abuse. At a hearing where M.B. entered a plea of guilty to the charge, he admitted that he had whipped the boy, struck him in the face and pulled hair out of his head. M.B. was sentenced to fifteen years in the Department of Corrections. Thereafter, A.M.B. was born on December 7, 1984. By the time of A.M.B.'s birth, appellant was serving his sentence.

A petition for termination of the parental rights of appellant was filed by the Greene County Juvenile Officer. Following a trial, the court terminated appellant's parental rights to A.M.B.

The relevant statutory provisions authorizing the termination of parental rights are found in § 211.447.2, RSMo 1986, which provides:

> The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:
>
> . . . .
>
> (2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
>
> . . . .
>
> (c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or *any child in the family by the parent*, including an act of incest, or by another under circumstanc-

Michael Baker, Springfield, for defendant-appellant.

George M. Johnson, Springfield, for plaintiff-respondent.

HOLSTEIN, Judge.

M.B. appeals from an order of the Juvenile Division of the Circuit Court of Greene County terminating his parental rights to his minor child, A.M.B. The sole point on appeal is whether evidence that appellant had severely abused another child residing in the home, but to whom appellant was not related, is a sufficient basis for terminating appellant's parental rights to A.M.B. We affirm.

The case comes to us on a stipulated set of facts. M.B. and C.V. are respectively the father and mother of A.M.B. M.B. and C.V. were unmarried but living together

es that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family [emphasis added].

Section 211.442, RSMo 1986, defines child as "... an individual under eighteen years of age." The same statute defines parent as "... a biological parent or parents of a child, as well as, the husband of a natural mother at the time the child was conceived, or a parent or parents of a child by adoption ..." Family is not defined in Chapter 211, RSMo.

Appellant argues that S.S. was not a "child in the family" at the time of the abuse because at the time of the abuse, appellant was not married to the mother of S.S. and he was not a parent of S.S. by blood or adoption. Appellant contends that the statute "only authorizes termination for abuse of a child in the parent's family." We agree that if S.S. and appellant are not members of the "family" in which the physical abuse occurred, such conduct would not authorize a termination of appellant's parental rights to A.M.B. However, if "family" is defined in broad enough terms to include S.S. and M.B. as being members of the same family, the abusive conduct is sufficient to justify termination of the parental rights. Its meaning necessarily depends on the field of law in which the word is used, the purpose intended to be accomplished by its use, and the facts and circumstances of each case. Black's Law Dictionary 543 (5th ed. 1979).

■ When a court of appeals construes a statute, it does so in light of the purposes the legislature intended to accomplish and the evils it intended to cure. *Gannett Outdoor Co. v. Missouri Highway and Transportation Commission,* 710 S.W.2d 504, 506 (Mo.App.1986). The legislatively declared purpose of the statutes relating to juvenile courts is to facilitate the care, protection and discipline of children. § 211.011, RSMo 1986. A construction of the word "family" which serves that purpose should be preferred.

By using the word "family" in the statute, we may presume that the legislature used the word in light of and as construed in Supreme Court cases which predated the enactment of the statute. *City of St. Joseph v. Hankinson,* 312 S.W.2d 4, 8 (Mo. 1958); *State v. Taylor,* 714 S.W.2d 767, 769 (Mo.App.1986). The particular statute in question was enacted in 1985. The cases predating the enactment of § 211.447.2 indicate that while the word "family" is one of great flexibility, it is usually to be construed in its broad and primary sense as a collective body of persons living together in one home in a permanent and domestic character, under one head or management who have reciprocal, natural or moral duties to support and care for each other. *Smith v. Estate of Sypret,* 421 S.W.2d 9, 14 (Mo.1967); *Embry v. Estate of Martz,* 377 S.W.2d 367, 370 (Mo.1964); *Steva v. Steva,* 332 S.W.2d 924, 926–927 (Mo.1960); *Schanz v. Estate of Terry,* 504 S.W.2d 653, 656 (Mo.App.1974); *Dalton v. Poinsett,* 164 S.W.2d 124, 128 (Mo.App.1942); *State ex rel. Kemp v. Arnold,* 234 Mo.App. 154, 113 S.W.2d 143, 145 (1938). The legislature, by using the word "family" in lieu of some more restrictive term, recognized that where adults and children are residing together, a potential exists for abuse of the children. When one of those adults has severely or repeatedly physically abused any such child, his propensity to such conduct subjects him to forfeiture of parental rights to other children. The legislature, by this enactment, intended to protect children from the threat of the type of cruelty committed by appellant.

■ Appellant cites *Morris v. Retz,* 413 S.W.2d 544, 548 (Mo.App.1967) for the proposition that mere cohabitation with the mother of S.S. did not create a family relationship. In addition, appellant argues he had no legal duty to support, no duty to care for, and no duty to control S.S. While the stipulation of the parties does not describe the precise details of the relationship between M.B. and C.V., there is nothing to indicate their relationship was that of employer-employee, as was the case in *Morris.* On the contrary, the facts stipulated indicate not only cohabitation, but that a sexual relationship existed between M.B. and C.V. Their child, A.M.B., was apparently

conceived during the early part of 1984. During the same period of time, appellant voluntarily undertook to inflict his bizarre version of discipline on S.S. For a "family" relationship to exist, there is no requirement in the statutes or case law that the relationship be encumbered with the legal obligations of marriage, adoption, or blood kinship. Appellant's cohabitation in the same home, coupled with his sexual relationship with the mother of S.S. and his exercise of control over S.S., are sufficient evidence for a trial court to find that appellant and S.S. were members of the same family. The trial court committed no error in making that finding. The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.